RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0041p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

―――――――――――

ROGER HAINES,

                *Plaintiff-Appellant*,

    *v.*

FEDERAL MOTOR CARRIER SAFETY
ADMINISTRATION; DARIN JONES; ANNE S. FERRO;
T.F. SCOTT DARLING III,

                *Defendants-Appellees*.

No. 15-1624

―――――――――――

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:14-cv-14438—Thomas L. Ludington, District Judge.

Decided and Filed: February 18, 2016

Before: SILER, CLAY, and KETHLEDGE, Circuit Judges.

―――――――――――

**COUNSEL**

**ON BRIEF:** Joni M. Fixel, FIXEL & NYEHOLT, PLLC, Okemos, Michigan, for Appellant.
Derri T. Thomas, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellees.

―――――――――――

**OPINION**

―――――――――――

CLAY, Circuit Judge. Plaintiff Roger Haines filed suit against Defendants Federal Motor Carrier Safety Administration (the "FMCSA")—an agency within the United States Department of Transportation ("DOT")—and FMCSA agents T.F. Scott Darling III, Darin Jones, and Anne S. Ferro (collectively, "Defendants"). According to Haines, Defendants' handling of the

temporary suspension of his motor carrier operations violated his rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution and gave rise to a claim under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.*  The district court disagreed, granted Defendants' motion to dismiss, and denied Haines' motion for leave to amend his complaint.  For the following reasons, we **AFFIRM**.

## BACKGROUND

### Factual Background

The complaint alleges the following.  Haines owns and operates a tour bus company known as "Haines Tours."  In 2000, he modified the luggage compartment in one of his busses to become a new sleeper area.  In designing the sleeper area, Haines took various precautions to insure compliance with FMCSA regulations.[1]

After an FMCSA compliance review in August 2010, Haines hired an attorney to obtain FMCSA approval for the sleeper area.  In a letter dated May 16, 2011, the FMCSA informed Haines that he could use the bus's luggage compartment as a sleeper area without additional approval if he complied with the applicable regulation.  *See* 49 C.F.R. § 393.76.

On May 29, 2011, Haines permitted some of his family members to ride in the sleeper area while the bus was in motion.  An unidentified individual saw Haines' family members riding in the converted luggage compartment and notified the authorities.

As a result of this incident, on June 10, 2011, the FMCSA issued an order placing all of Haines' busses, including three busses without sleeper areas, out of service.  The out-of-service order also identified Haines Tours as an "imminent hazard" to public safety based on the FMCSA's finding that the "unauthorized transportation of passengers in the cargo area of [Haines Tours'] motorcoaches . . . substantially increase[d] the likelihood of serious injury or death if not discontinued immediately."  (R. 1-4, Ex. C 1).  Haines alleges that as a result of this order, two of his busses without sleeper areas were forced off the road during a trip to Chicago,

---

[1]Among other things, the FMCSA is charged with establishing procedures and conducting compliance reviews in order to evaluate the "safety fitness" of commercial motor carriers.  *A.D. Transp. Express, Inc. v. United States*, 290 F.3d 761, 763–64 (6th Cir. 2002).

Illinois, and Haines Tours was required to make alternative arrangements to insure that its customers reached their respective destinations. Haines also alleges that the out-of-service order exceeded the scope of the FMCSA's authority under 49 C.F.R. § 386.72(b)(2) because such orders cannot impose restrictions "beyond that required to abate the hazard."

On June 14, 2011, Haines contacted Defendant Darin Jones, a field administrator for the FMCSA Midwestern Service Center, and informed Jones that he had implemented the corrective measures outlined in the out-of-service order. In an order dated June 15, 2011, Jones rescinded the out-of-service order based on a finding that the "corrective measures implemented by [Haines Tours] ha[d] abated the condition of imminent hazard." (R. 5, Am. Compl. ¶ 27; R. 1-6, Ex. E). The following day, however, Defendant Anne S. Ferro, the Administrator of the Midwestern Service Center, vacated Jones' rescission order because she, unlike Jones, was not persuaded that Haines' corrective measures had abated the imminent hazard. After receiving Ferro's order, Haines contacted his congressional representatives "to see if anything could be done," retained counsel "to assist in communications with the FMCSA," and hired outside tour bus companies to fulfill his existing contracts. (*See id.* at ¶¶ 30–31, 33).

In February 2012, the FMCSA rescinded its out-of-service order. Although Haines Tours failed a March 2012 inspection for reasons Haines alleges were "pretext[ual]," following an audit in October 2012, DOT reinstated Haines' certificate of authority in January 2013.

**Procedural Background**

Haines filed the instant lawsuit on November 19, 2014, and filed the Amended Complaint, which is the operative complaint, on January 20, 2015. Haines alleges that the FMCSA's "unjust actions" caused him to suffer injuries in the form of (1) lost revenues, (2) personal humiliation and embarrassment, (3) loss of standing in the business community, (4) anger, outrage, and indignation, and (5) attorney's fees. In an apparent effort to recoup these losses, he brought three causes of action for (1) violation of the APA, (2) a claim under 42 U.S.C. § 1983 for violation of his right to procedural due process under the Fourteenth Amendment, and (3) a § 1983 claim for violation of his right to equal protection under the Fourteenth Amendment.

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and failure to state a claim. Haines filed a brief opposing Defendants' motion to dismiss as well as a separate motion for leave to amend the complaint. As part of his motion for leave to amend, Haines sought permission to bring his constitutional claims against Defendants (a federal agency and its agents who were ostensibly acting under color of federal law) under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), rather than § 1983. In opposing Haines' motion for leave to amend, Defendants argued that permitting Haines to file an amended complaint would be futile because (1) Haines' constitutional claims were time-barred by Michigan's three-year statute of limitations, (2) the FMCSA, as a federal agency, could not be sued under a *Bivens* theory, and (3) there was no basis for recognizing a new *Bivens* remedy against the FMCSA's agents because Haines had an adequate, alternative remedy available to him through the administrative review process.

The district court granted Defendants' motion to dismiss and denied Haines' motion for leave to amend. The district court dismissed Haines' APA claim for lack of subject matter jurisdiction based on its findings that (1) Haines failed to exhaust his administrative remedies before challenging the FMCSA's actions in federal court; and (2) the out-of-service order was not a "final agency action" within the meaning of the APA. *Haines v. Fed. Motor Carrier Safety Ass'n*, No. 14-cv-14438, 2015 WL 1912338, at *2–4, *6 (E.D. Mich. Apr. 27, 2015). The district court also dismissed Haines' constitutional claims with prejudice on the grounds that Haines could not state a viable § 1983 claim against Defendants because § 1983 applies to persons acting under color of state law, not persons acting under color of federal law. *Id.* at *4, *6. Lastly, the district court denied Haines' motion for leave to amend his complaint, concluding that amendment would be futile because Haines' constitutional claims were barred by Michigan's three-year statute of limitations and an amended complaint could not survive a 12(b)(6) motion. *Id.* at *4–6. The district court reached the latter conclusion based on its finding that "a *Bivens* remedy [wa]s not available because the APA provide[d] an adequate alternative remedy for unfavorable agency actions." *Id.* at *5. Haines timely appealed the district court's order and judgment.

## DISCUSSION

### I.  The APA Claim

We review *de novo* a district court's decision to dismiss a claim for lack of subject matter jurisdiction or failure to state a claim.  *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014).  Even where the district court relies on erroneous grounds in reaching its decision, we may affirm that decision "on any ground supported by the record."  *Bangura v. Hansen*, 434 F.3d 487, 498 n.3 (6th Cir. 2006) (citing *City Mgmt. Corp. v. U.S. Chem. Corp.*, 43 F.3d 244, 251 (6th Cir. 1994)); *see also Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

As indicated, the district court dismissed Haines' APA claim for lack of subject matter jurisdiction based, in part, on Haines' failure to exhaust his administrative remedies.  Although we find that the district court erred in making this determination, we affirm the dismissal of Haines' APA claim on alternative grounds.

### A.  Lack of Subject Matter Jurisdiction

"The APA 'sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts.'"  *Muniz-Muniz v. U.S. Border Control*, 741 F.3d 668, 672 (6th Cir. 2013) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)).  Importantly, "[t]he APA is not a jurisdiction-conferring statute; it does not directly grant subject matter jurisdiction to the federal courts."  *Jama*, 760 F.3d at 494 (citing *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 523 n.3 (1991); *Califano v. Sanders*, 430 U.S. 99, 105 (1977)).  Instead, "the judicial review provisions of the APA provide a limited cause of action for parties adversely affected by agency action."  *Jama*, 760 F.3d at 494 (citations omitted); *see also Md. Dep't of Human Res. v. Dep't of Health & Human Servs.*, 763 F.2d 1441, 1445 n.1 (D.C. Cir. 1985).  Thus, "[a]lthough the APA does not directly grant jurisdiction, the federal question statute, 28 U.S.C. § 1331, 'confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate.'"  *Jama*, 760 F.3d at 494 (quoting *Califano*, 430 U.S. at 105); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 84 (2d Cir. 2008); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 185 (D.C. Cir. 2006).  Because the district court had subject matter jurisdiction

over Haines' APA claim under the federal question statute, 28 U.S.C. § 1331, absent some other jurisdictional bar, dismissal for lack of subject matter jurisdiction was inappropriate. *See Jama*, 760 F.3d at 494.

The district court held that it lacked subject matter jurisdiction over the APA claim due to Haines' failure to exhaust his administrative remedies. *Haines*, 2015 WL 1912338, at *2–3. However, as explained more fully below, since Haines was not *required* to exhaust his administrative remedies before the FMCSA under the relevant statute or regulation, *see* 49 U.S.C. § 521(b)(5)(A), 49 C.F.R. § 386.72(b)(4), this was an erroneous rationale for dismissing Haines' APA claim on jurisdictional grounds. *See Bangura*, 434 F.3d at 498 ("Plaintiffs' failure to exhaust their administrative remedies does not deprive this court of subject matter jurisdiction over Plaintiffs' APA claims . . . [because] [w]here an intra-agency appeal is optional . . . the APA does not require a plaintiff to appeal prior to filing suit in federal court.").

Similarly, it was inappropriate for the district court to dismiss Haines' APA claim for lack of subject matter jurisdiction on the grounds that the out-of-service order was not a "final agency action" within the meaning of the APA. *Haines*, 2015 WL 1912338, at *3–4. Because the APA is not a jurisdiction-conferring statute, "[the] elements of a claim under the APA, including the final agency action requirement, are not jurisdictional." *Jama*, 760 F.3d at 494 & n.4 (citing *Trudeau*, 456 F.3d at 184); *see also Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805–06 (D.C. Cir. 2006). Accordingly, whether the out-of-service order constituted a "final agency action" under the APA is properly considered with regard to whether Haines failed to state a claim upon which relief could be granted, not whether the district court had subject matter jurisdiction over any such claim. *See Jama*, 760 F.3d at 494 n.4; *see also Funds for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 & n.4 (D.C. Cir. 2006) (noting that "[w]hether there has been 'agency action' or 'final agency action' within the meaning of the APA are threshold questions," but that these questions speak to failure to state a claim under Rule 12(b)(6) rather than lack of subject matter jurisdiction under Rule 12(b)(1)).[2]

---

[2]Because remand "'would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion,'" remand is unnecessary to correct the district court's error. *Jama*, 760 F.3d at 495 n.5 (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010)).

Although Haines' failure to exhaust his administrative remedies did not deprive the district court of jurisdiction over this matter, Defendants' briefs identified a second, separate jurisdictional bar that the district court did not address: sovereign immunity. Defendants argue that the courts lack subject matter jurisdiction over Haines' APA claim because the types of relief sought in Haines' complaint—specifically, money damages—are not covered by the APA's limited waiver of sovereign immunity. Haines maintains that the relief he seeks falls within the APA's limited waiver of sovereign immunity because he is requesting restitution, not money damages.

"The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997) (citing *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1325 (6th Cir. 1993)); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983). As part of its limited waiver of sovereign immunity, the APA provides that:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. Thus, the APA "provides a broad waiver of sovereign immunity," limited by the exceptions provided under the statute. *Beamon*, 125 F.3d at 967. Relevant to this case, although "[t]he [APA] waives sovereign immunity for claims for *equitable relief* against federal officials," *Capital Park Ltd. Dividend Hous. Ass'n v. Jackson*, 202 F. App'x 873, 877 (6th Cir. 2006) (emphasis added) (citations omitted), the waiver of sovereign immunity does not apply to actions seeking *money damages*. 5 U.S.C. § 702; *see Cohen v. United States*, 650 F.3d 717, 723 (D.C. Cir. 2011); *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998).

Analogizing this case to *Bowen v. Massachusetts*, 487 U.S. 879 (1988), Haines argues that the relief he seeks is restitution, rather than money damages. *Appellant's Br.* at 11. This argument is unpersuasive.

*Bowen* dealt with Massachusetts' lawsuit for the reimbursement of Medicaid payments allegedly owed by the federal government. 487 U.S. at 882–87. Before the Supreme Court, the Secretary of the U.S. Department of Health and Human Services argued that the suit was not authorized under the APA because it was a suit for money damages. *Id.* at 891. The Court rejected this argument, explaining:

> Our cases have long recognized the distinction between an action at law for damages—which [is] intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for . . . "the recovery of specific property or monies."

*Id.* at 893 (emphasis omitted) (citation omitted). While the term "'money damages' . . . normally refers to a sum of money used as compensatory relief" or intended to "substitute for a suffered loss," specific remedies "'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'" *Id.* at 895 (emphasis omitted) (quoting *Md. Dep't of Human Res.*, 763 F.2d at 1446). Accordingly, the Court held that Massachusetts' lawsuit was a suit "to enforce § 1396b(a) of the Medicaid Act, which provides that the Secretary 'shall pay' certain amounts for appropriate Medicaid services," rather than "a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated." *Id.* at 900 (emphasis in original).

In the instant case, Haines' requested relief is readily distinguishable from the specific relief at issue in *Bowen*. Haines seeks compensatory damages for his business losses, emotional distress, and tarnished business reputation, as well as punitive and exemplary damages. These are traditional money damages, meant to compensate Haines for his alleged injuries resulting from the FMCSA's actions. Nowhere in his complaint or briefs does Haines attribute, or even attempt to connect, his requests for monetary relief to a statutory entitlement or mandate that happens to require monetary payment. Instead, it is clear from Haines' own characterization of the requested relief—"damages in an amount commensurate" with his business and other losses—that the monetary relief he seeks is "compensation for the damage sustained" due to the FMCSA's suspension of his operations. *Cf. Bowen*, 487 U.S. at 900–01.

Overall, to the extent that Haines seeks monetary damages under the APA, we lack jurisdiction over his claim. 5 U.S.C. § 702. However, because the complaint also seeks injunctive relief, we must address whether Haines' APA claim should have survived a motion to dismiss to the extent that it sought relief for which the federal government has waived sovereign immunity.

## B. Failure to State a Claim

Defendants argue that Haines' APA claim was rightfully dismissed because he failed to exhaust his administrative remedies.[3] Haines, on the other hand, relies on the Supreme Court's holding in *Darby v. Cisneros*, 509 U.S. 137 (1993), to support his contention that he was not required to exhaust his administrative remedies before bringing suit in federal court.

"[The APA] only requires a plaintiff to exhaust his or her administrative remedies where a statute or agency rule makes the remedies mandatory." *Bangura*, 434 F.3d at 498 (citations omitted). In this vein, the Supreme Court has held that because the APA "explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule[,] it would be inconsistent with the plain language of [§ 704] for courts to require litigants to exhaust *optional* appeals as well." *Darby*, 509 U.S. at 146–47 (emphasis added). Accordingly, "[w]here an intra-agency appeal is optional . . . , the APA does not require a plaintiff to appeal prior to filing suit in federal court." *Bangura*, 434 F.3d at 498 (citation omitted).

Defendants maintain that Haines was required to exhaust his administrative remedies before seeking judicial review under 49 U.S.C. § 521(b)(5)(A) and 49 C.F.R. § 386.72(b). However, neither of these authorities supports Defendants' argument. Section 521(b)(5)(A), states that "[s]ubsequent to the issuance of [an out-of-service] order, *opportunity for review* shall be provided in accordance with [the APA], except that such review shall occur not later than 10 days after issuance of such order." 49 U.S.C. § 521(b)(5)(A) (emphasis added). The corresponding regulation, which was cited in the out-of-service order under the heading entitled "RIGHT TO REVIEW," similarly provides that "*[o]pportunity for review* shall be provided in

---

[3]Defendants, like the district court, erroneously frame this question in terms of subject matter jurisdiction rather than failure to state a claim.

accordance with [the APA], except that such review shall occur not later than 10 days after issuance of such order, as provided by [49 U.S.C. § 521(b)(5)]." 49 C.F.R. § 386.72(b)(4) (emphasis added). Finally, a second DOT regulation on which Defendants tangentially rely provides that:

> Any party to the underlying proceeding, who, after an administrative adjudication, is adversely affected by a Final Agency Order issued under 49 U.S.C. [§] 521 *may*, within 30 days of service of the Final Agency Order, petition for review of the order in the United States Court of Appeals in the circuit where the violation is alleged to have occurred, or where the violator has its principal place of business or residence, or in the United States Court of Appeals for the District of Columbia Circuit.

49 C.F.R. § 386.67(a) (emphasis added). This language mirrors that of the related statutory provision: 49 U.S.C. § 521(b)(9).

As is clear from the language of those authorities—the italicized language in particular—none of these provisions requires or mandates that a party subject to an out-of-service order exhaust his or her administrative remedies with the FMCSA prior to filing suit in federal court. Instead, these authorities refer to the plaintiff's right to review of an out-of-service order in permissive language, i.e., using the word "may" and describing the process as an "opportunity for review." 49 U.S.C. § 521 (b)(5)(A); 49 C.F.R. § 386.72(b)(4). *Cf. Bangura*, 434 F.3d at 498 (finding that exhaustion was not required by the relevant regulation where it "provid[ed] that a party 'may' appeal to the [agency]"); *Darby*, 509 U.S. at 141, 146–47 (concluding that administrative review was optional under a regulation providing that "[a]ny party *may* request such a review in writing within 15 days of receipt of the hearing officer's determination") (emphasis added) (citation and quotation marks omitted). Thus, it was error to dismiss Haines' APA claim on the grounds that he failed to exhaust his administrative remedies because exhaustion was neither required by statute nor by agency rule. *See Darby*, 509 U.S. at 146–47.

Although we are not persuaded that Haines' APA claim should have been dismissed for lack of subject matter jurisdiction based on his failure to exhaust his administrative remedies, dismissal was nonetheless warranted for failure to state a claim. This is because "[t]o state a claim for relief under the APA, a plaintiff must allege that his or her injury stems from a final agency action *for which there is no other adequate remedy in court.*" *Bangura*, 434 F.3d at 500

(citing 5 U.S.C. § 704; *Gillis v. U.S. Dep't of Health & Human Servs.*, 759 F.2d 565, 575 (6th Cir. 1985) (emphasis added); *see also Sackett v. EPA*, 132 S. Ct. 1367, 1372 (2012); *Fligiel v. Sampson*, 440 F.3d 747, 751 (6th Cir. 2006). With regard to the "no other adequate remedy in court" prerequisite, "[t]he essential inquiry is whether another statutory scheme of judicial review exists so as to preclude review under the more general provisions of the APA." *Bangura*, 434 F.3d at 501 (citations omitted); *see also Bowen*, 487 U.S. at 903 ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."). Haines does not argue that he had "no other adequate remedy in court" and we find that he *did* have an adequate, alternative remedy available to him under the DOT statutes. Accordingly, his APA claim should be dismissed for failure to state a claim.

In *Bangura*, we found that a plaintiff had no other adequate remedy in court to challenge the Immigration and Naturalization Service's denial of her husband's spousal immigration petition because the applicable statute "d[id] not specifically provide for federal court review of denials of visa petitions." 434 F.3d at 492, 501–02. In light of this gap in the available statutory remedies, we held that the plaintiff had no other adequate remedy in court. *Id.* at 501. No such gap exists in this case.

The statutory scheme governing out-of-service orders provides for judicial review, by this Court or the D.C. Circuit, following administrative review by the FMCSA pursuant to 49 U.S.C. § 521(b)(5)(A). To that end, 49 U.S.C. § 521(b)(9) states:

> Any aggrieved person who, after a hearing, is adversely affected by a final order issued under this section may, within 30 days, petition for review of the order in the United States Court of Appeals in the circuit wherein the violation is alleged to have occurred or where the violator has his principal place of business or residence, or in the United States Court of Appeals for the District of Columbia Circuit.

The statute also provides that in reviewing a final order by the DOT Secretary, the court of appeals is charged with determining "whether the Secretary's findings and conclusions were supported by substantial evidence, or were otherwise not in accordance with law." 49 U.S.C. § 521(b)(9). Thus, had Haines sought review of the out-of-service order before the FMCSA and found himself dissatisfied with the Secretary's findings and conclusions, he could have sought

judicial review from this Court or the D.C. Circuit. Finally, Haines does not allege that he elected not to seek administrative review because such a remedy would have been inadequate.[4] Because the statute provides for review by an appellate court following administrative review, and because the APA's "no other adequate remedy in court" requirement is intended to "insure[] that the APA's general grant of jurisdiction to review agency decisions is not duplicative of more specific statutory procedures for judicial review," we find that Haines has failed to show that his alleged injury "stems from a final agency action for which there is no other adequate remedy in court." *See Bangura*, 434 F.3d at 500–01.

For the aforementioned reasons, we affirm the district court's dismissal of Haines' APA claim on a ground supported by the record but not stated by the district court: Haines' failure to state a claim on which relief may be granted.

## II. The Constitutional Claims

The district court dismissed Haines' constitutional claims with prejudice for failure to state a claim on which relief may be granted. We review that determination *de novo*. *Jama*, 760 F.3d at 494. In considering whether the allegations "'plausibly suggest an entitlement to relief,'" we must "[a]ccept[] all well-pleaded allegations in the complaint as true." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)).

### A. § 1983

Below, the district court found that Haines did not "state[] a claim for which relief may granted with respect to his [constitutional claims]" because even though he was "suing only federal actors, he nonetheless brought suit pursuant to 42 U.S.C. § 1983." *Haines*, 2015 WL 1912338, at *4. The court concluded that "[b]ecause § 1983 does not apply to federal actors," Haines' constitutional claims should be dismissed for failure to state a claim under Rule 12(b)(6). *Id.*

---

[4]To extent that Haines argues that Defendants somehow prevented him from contesting the out-of-service order, this contention is plainly belied by Haines' failure to allege that he actually sought administrative review of the order, as well as the order's "RIGHT TO REVIEW" section, which directed Haines' attention to the regulations governing administrative review.

"To establish a claim under § 1983, a plaintiff must show that he was deprived of rights guaranteed under the United States Constitution or federal law by a person acting 'under color of state law.'" *Strickland on Behalf of Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997). In this case, Haines brought his constitutional claims against a federal agency—the FMCSA—and three FMCSA agents. However, as a general matter, "[t]he federal government and its officials are not subject to suit under [§ 1983]." *Conner v. Greef*, 99 F. App'x 577, 580 (6th Cir. 2004) (citing *Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 931 (6th Cir.1987)). This is because actions taken by federal agencies are "governed by and are taken pursuant to [federal statute]," *Ana Leon T.*, 823 F.2d at 931, and "federal officials typically act under color of *federal* law," *Strickland*, 123 F.3d at 866 (emphasis in original). It was in recognition of this legal misstep— bringing a § 1983 action against a federal agency and its officials—that Haines sought leave to amend his complaint to allege a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Accordingly, we affirm the district court's dismissal of Haines' § 1983 claims.

## B. *Bivens*

Although Haines acknowledged that pursuing his constitutional claims under § 1983 was improper, he requested leave to amend his complaint to pursue the same claims under *Bivens*. Haines also sought leave to amend the complaint to name defendants Darling, Jones, and Ferro in their individual, rather than official, capacities. The district court denied Haines' request for leave to amend his complaint on the grounds that (1) any *Bivens* claims would be time-barred by Michigan's three-year statute of limitations; and (2) a *Bivens* remedy was not available because Haines had an adequate, alternative remedy.

### 1. Statute of Limitations

"We apply *de novo* review to a ruling dismissing claims as barred by the statute of limitations." *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d 367, 374 (6th Cir. 2015) (citing *In re Vertrue Inc. Mktg. & Sales Litig.*, 719 F.3d 474, 478 (6th Cir. 2013)).

In Michigan, civil rights actions are subject to a three-year statute of limitations. Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986) (per curiam).

Since the FMCSA issued the out-of-service order that allegedly caused Haines' injuries on June 10, 2011, the three-year statute of limitations began to run on that date. Haines did not file the instant lawsuit, however, until November 19, 2014. On this basis, the district court found that Haines' constitutional claims, even if re-cast as *Bivens* claims, were time-barred. *Haines*, 2015 WL 1912338, at *5.

On appeal, Haines contends that although the district court "correctly applied [the] Michigan statute of limitations," it erred by failing to apply Michigan's tolling statute. *Appellant's Br.* at 6–10. In support of this argument, Haines filed a motion requesting that this Court take judicial notice of his complaint filed against Defendants on June 3, 2014, which was allegedly dismissed by the district court without prejudice on November 12, 2014.

We decline to entertain Haines' tolling argument or his request for judicial notice. Even though Defendants first argued that any *Bivens* claim brought by Haines would be time-barred by Michigan's three-year statute of limitations in their motion to dismiss, Haines failed to address this argument or raise the issue of tolling in his response to the motion or his perfunctory motion for leave to amend. "It is well-settled that this [C]ourt will not consider arguments raised for the first time on appeal unless [the] failure to consider the issue will result in a plain miscarriage of justice." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citation omitted). This general rule of waiver applies with equal force in cases involving issues pertaining to the statute of limitations or tolling thereof. *See, e.g.*, *Pate v. Huntington Nat'l Bank*, 560 F. App'x 506, 511 (6th Cir. 2014) (tolling); *Exp.-Imp. Bank of U.S. v. Advanced Polymer Sci., Inc.*, 604 F.3d 242, 247–48 (6th Cir. 2010) (statute of limitations). Further, as explained below, declining to address Haines' tolling argument would not result in a miscarriage of justice because Haines' *Bivens* claims could not survive a motion to dismiss. *See One Beacon Ins. Co. v. Chiusolo*, 295 F. App'x 771, 776 (6th Cir. 2008).

## 2. Adequate, Alternative Remedy

Defendants argue that it would be futile to grant Haines leave to include his proposed *Bivens* claims in an amended complaint because there is no basis for recognizing a new *Bivens* remedy on the facts of this case, and Haines' claims, therefore, would not survive a motion to

dismiss. Adopting this reasoning, the district court denied Haines' motion to amend. *Haines*, 2015 WL 1912338, at *5–6. We review *de novo* the denial of a motion for leave to amend on the grounds that the amended pleading would not survive a motion to dismiss. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008).

In *Bivens*, the Supreme Court "held that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Recognizing that "Congress had never provided for a private right of action against federal officers," and "'the Fourth Amendment does not in so many words provide for its enforcement by award of money damages for the consequences of its violation,'" the Court implied a new constitutional tort in order to redress the plaintiff's constitutional injury. *Id.* at 66–67 (quoting *Bivens*, 403 U.S. at 396). In the years following *Bivens*, the Court also recognized "an implied damages remedy under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980)." *Id.* at 67. However, since deciding *Carlson* in 1980, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Id.* at 68; *see also Minneci v. Pollard*, 132 S. Ct. 617, 622 (2012).

"Under *Bivens*, a plaintiff must initially demonstrate (1) a challenged action attributable to a person acting under color of federal law, and (2) conduct that deprives the party of a constitutionally protected interest." *Left Fork Mining Co. v. Hooker*, 775 F.3d 768, 774 (6th Cir. 2014) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 418–21 (1988)). "If those elements are satisfied, the Court then proceeds to a two-step inquiry to ascertain whether a *Bivens* damages remedy should be inferred." *Left Fork*, 775 F.3d at 774 (citing *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

In this case, Haines' proposed second amended complaint alleges that Defendants violated Haines' constitutional right to procedural due process by "den[ying] [Haines] [the] orderly adjudication of [his] alleged safety violations." (R. 11-1, [Proposed] Second Am. Compl. ¶ 48). He apparently attributes this conduct to defendants Jones and Ferro, not just the FMCSA, which cannot be sued under *Bivens*. *FDIC v. Meyer*, 510 U.S. 471, 486 (1994).

Additionally, Haines alleges that Defendants violated his constitutional right to equal protection of the laws by singling him out in their application of the sleeper berth regulation, and arbitrarily changing their determinations to drive him out of business—conduct Haines alleges "differ[ed] drastically" from Defendants' treatment of other commercial carriers.  Accepting these allegations as true, *see Williams*, 631 F.3d at 383, we find that Haines has sufficiently alleged that the challenged action (the arbitrary and capricious enforcement of the FMCSA regulations) was attributable to persons (Jones and Ferro) acting under color of federal law (the DOT statutes and regulations).  *See Left Fork*, 775 F.3d at 774.  Additionally, Haines has alleged that this conduct deprived him of his constitutionally protected interests in his property (his business operations) with respect to his due process claim, *see id.*, and equal protection under the laws.  *See Davis*, 442 U.S. at 235.  Thus, we must next determine whether a *Bivens* remedy is available to redress Haines' claims.

"A *Bivens* remedy is available only if (1) there are no 'alternative, existing process[es]' for protecting a constitutional interest and, (2) even in the absence of an alternative, there are no 'special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Left Fork*, 775 F.3d at 774 (quoting *Wilkie*, 551 U.S. at 550).  "When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Schweiker*, 487 U.S. at 423.  Thus, "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability." *Corr. Servs. Corp.*, 534 U.S. at 69 (citation omitted).

In the instant case, 49 U.S.C. § 521(b)(5)(A) and 49 C.F.R. § 386.72(b)(4), in combination with 49 U.S.C. § 521(b)(9) and 49 C.F.R. § 386.67, provided an adequate, alternative procedure for protecting Haines' constitutional interests because they permit judicial review, by an appellate court, of a commercial carrier's challenge to an out-of-service order. Haines had the opportunity to seek administrative review under 49 U.S.C. § 521(b)(5)(A).  If he was dissatisfied with the result of his hearing before the FMCSA, he could have petitioned for review by this Court or the D.C. Circuit, and either court would have been charged with

determining whether "the Secretary's findings and conclusions were supported by substantial evidence, o*r were otherwise not in accordance with law*."  49 U.S.C. § 521(b)(9) (emphasis added).  Thus, there is no indication—from the statutory text or Haines himself—that Haines would not have been able to raise and adjudicate his constitutional claims through this statutory procedure, even if the claims were considered for the first time by the reviewing appellate court.  For these reasons, we find that an adequate, alternative process for protecting Haines' constitutional interests existed under 49 U.S.C. § 521(b)(5)(A) and (b)(9).  The availability of this statutory mechanism, which gave Haines a meaningful remedy to redress his alleged injuries, also weighs against recognizing a new *Bivens* remedy in this lawsuit.  *See Left Fork*, 775 F.3d at 776 (citing *Schweiker*, 487 U.S. at 423).  Thus, we affirm the district court's denial of Haines' motion for leave to amend.

## CONCLUSION

For the reasons stated in this opinion, we **AFFIRM** the district court's grant of Defendants' motion to dismiss and denial of Haines' motion for leave to amend.